STATE of Minnesota, Respondent,

v.

Vusumuzi Keke ZULU, Appellant.

No. A04–2327.

Court of Appeals of Minnesota.

Dec. 27, 2005.

Mike Hatch, Attorney General, St. Paul, MN, and Amy Klobuchar, Hennepin County Attorney, Thomas A. Weist, Assistant County Attorney, Minneapolis, MN, for respondent.

Kassius O. Benson, Special Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by TOUSSAINT, Presiding Judge, STONEBURNER, Judge, and HUSPENI, Judge.[*]

## OPINION

STONEBURNER, Judge.

Appellant challenges his conviction of criminal sexual conduct in the first degree, arguing that the district court abused its discretion by admitting evidence prejudicial to appellant. Appellant also challenges the upward durational sentencing departure imposed by the district court, arguing that (1) his waiver of a jury determination of aggravating sentencing factors was not knowing, intelligent, and voluntary; (2) he did not waive his right to a jury determination of whether the alleged criminal conduct occurred after the effective date of amendments to Minn.Stat. § 609.342, subd. 2(b); and (3) the district court erred by using unproven and uncharged conduct to support the departure.

## FACTS

K.Z., who was born on September 15, 1989, is appellant Vusumuzi Keke Quo Zulu's daughter. Appellant was never married to K.Z.'s mother, but K.Z. stayed with appellant for varying lengths of time

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

at three different locations: the "Orange Apartment," appellant's parent's home, and the "Northeast Apartment." When she was 13 years old, K.Z. told her 17–year–old cousin, C.S., and her friend, A.U.B., that appellant had been sexually abusing her since she was eight or nine years old. In 2004, K.Z. told her mother, Lacecia Nalls, about the abuse. Nalls called appellant's parents and the police. The police had K.Z. write down everything that had happened to her, and K.Z. was interviewed at Cornerhouse, a nonprofit child abuse evaluation center, by Sara Blahauvietz. Based on the Cornerhouse interview, a search warrant was obtained for appellant's residence. K.Z.'s journals and evidence of semen on the carpet in a location described by K.Z. were found in appellant's residence. DNA testing determined that the semen was appellant's.

Appellant was charged with criminal sexual conduct in the first and third degree. Appellant denied sexually abusing K.Z. and asserted that she is fabricating the allegations due to jealousy over his girlfriend whom he married prior to trial (wife). Prior to trial, appellant moved to exclude the admission of the Cornerhouse interview into evidence as hearsay. The state argued that the interview was admissible as a prior consistent statement, noting that K.Z.'s credibility was at issue and that K.Z. and the interviewer would testify at trial and be available for cross-examination. The motion was denied.

After K.Z. testified at trial, appellant renewed the motion to exclude the statement arguing, in part, that six major inconsistencies in the interview prevented the statement from being a prior "consistent" statement. After reviewing a transcript of the interview, the district court concluded that the statement was "substantially consistent" with K.Z.'s trial testimony, and therefore admissible.

During jury deliberations the jury was allowed, on its request, to view a portion of the interview videotape "where [K.Z.] is describing the room and where the ejaculant is on the carpet." The jury found appellant guilty as charged.

At a presentence hearing, appellant was questioned by his attorney about his understanding of his rights under *Blakely* "to have the jury decide beyond a reasonable doubt whether certain potentially aggravating factors have been met in this case." Appellant stated that he understood and further understood that even if the jury found the existence of aggravating factors, the district court would be responsible for determining the sentence. Appellant was asked by counsel: "And after discussions with me, is it your decision to waive that right to have a jury determine imposition?" Appellant responded: "Yes, it is."

At the sentencing hearing, the state noted that the presumptive sentence for criminal sexual conduct in the first degree increased from 86 months to 144 months effective August 1, 2000, and asked the district court for a double durational departure to 288 months. Appellant argued against an upward departure and requested a downward dispositional departure, arguing that he is amenable to probation. The district court concluded that the state had proved beyond a reasonable doubt that (1) appellant committed criminal sexual conduct in the first degree both before and after August 2000; (2) appellant had committed multiple acts and multiple types of criminal sexual conduct; (3) appellant had abused a position of authority; and (4) appellant had invaded K.Z.'s zone of privacy. Appellant objected to a departure based on "any other alleged conduct," and the court replied: "That did not enter into my decision making." The district court sentenced appellant to 195 months, and this appeal followed.

## ISSUES

I. Did the district court abuse its discretion when it admitted the Cornerhouse interview as a prior consistent statement?

II. Was appellant's Sixth Amendment right to trial by jury violated because he did not waive rights in addition to the right to have a jury determine the existence of aggravating factors or because sentencing was based on a judicial finding that appellant committed criminal sexual conduct in the first degree after August 1, 2000?

## ANALYSIS

### I. Admission of Cornerhouse statement

▮▮▮ Appellant argues that the district court abused its discretion by failing to redact K.Z.'s Cornerhouse interview to eliminate statements that were inconsistent with her trial testimony, including statements that were in the interview but not testified to at trial. "Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the trial court abused its discretion and that appellant was thereby prejudiced." *State v. Amos,* 658 N.W.2d 201, 203 (Minn.2003) (citations omitted). Even if the district court erred in admitting evidence, the reviewing court determines "whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict." *State v. Post,* 512 N.W.2d 99, 102 n. 2 (Minn.1994).

▮▮▮ An out-of-court statement is not hearsay, and is admissible as substantive evidence if (1) the declarant testifies at the trial or hearing; (2) the declarant is subject to cross-examination concerning the statement; (3) the statement is consistent with the declarant's testimony; and (4) the statement is helpful to the trier of fact in evaluating the declarant's credibility as a witness. Minn. R. Evid. 801(d)(1)(B); Minn. R. Evid. 801 1989 comm. cmt. "[W]hen a witness' prior statement contains assertions about events that have not been described by the witness in trial testimony, those assertions are not helpful in supporting the credibility of the witness and are not admissible under this rule." Minn. R. Evid. 801 1989 comm. cmt. "[B]efore the statement can be admitted, the witness' credibility must have been challenged, and the statement must bolster the witness' credibility with respect to that aspect of the witness' credibility that was challenged." *State v. Nunn,* 561 N.W.2d 902, 909 (Minn.1997). "[A] prior consistent statement might bolster credibility by showing a fresh complaint, obviating an improper influence or motive, providing a meaningful context, or demonstrating accuracy of memory." *State v. Bakken,* 604 N.W.2d 106, 109 (Minn.App.2000), *review denied* (Minn. Feb. 24, 2000). The trial testimony and the prior statement need not be identical to be consistent, *id.,* and admission of a videotaped statement that is "reasonably consistent" with the trial testimony is not reversible error, *In re Welfare of K.A.S.,* 585 N.W.2d 71, 76 (Minn.App.1998).

▮ In this case, appellant alleged six specific inconsistencies between K.Z.'s trial testimony and the videotaped interview. The district court did not specifically address any of the alleged inconsistencies but found the interview "substantially consistent" with K.Z.'s trial testimony. We agree. The first alleged major inconsistency concerned who was present when K.Z. reported the abuse to her mother. At trial, K.Z. and her mother testified that K.Z. first mentioned the sexual abuse at a family meeting, whereupon K.Z.'s mother took her to the bedroom to continue the

discussion in private. In the Cornerhouse interview, K.Z. stated that the other family members were present when she told her mother about the abuse. The district court did not abuse its discretion by concluding that this inconsistency was not substantial.

■ Appellant next points to a statement that K.Z. made at Cornerhouse, but did not testify to at trial, that wife found pages from K.Z.'s journal describing the abuse, that appellant told wife that K.Z. wrote the entry to get attention, and that appellant told K.Z. not to write about the abuse again. But K.Z. testified at trial that she had written in her journal about the abuse, had torn out the entry and placed it in a box, and did not know what happened to it. Wife testified that she had found the entry, which indicated that K.Z. was sexually active but did not indicate she was having sex with appellant, and gave it to appellant. And appellant testified that when he was given the entry he discussed it with K.Z. and expressed concern that she might be engaging in sexual intercourse. Again we conclude that the district court did not abuse its discretion by finding this discrepancy between K.Z.'s trial testimony and interview was not substantial.

■ In the Cornerhouse interview, K.Z. stated that appellant's wife may have seen appellant with his pants down while K.Z. was on the couch, but that K.Z. was not sure because the lights were off and wife acted as if she had not seen anything. K.Z. did not testify about this at trial. We conclude that this omission does not constitute an inconsistency because K.Z. never asserted that wife actually witnessed anything.

■ At Cornerhouse, K.Z. described an incident as having occurred at the "Orange Apartment" and in her trial testimony described the incident as having oc-

curred at the home of appellant's parents. Again, given the time over which the abuse occurred and the multiple locations involved, we conclude that the district court did not abuse its discretion by concluding that this inconsistency was not substantial.

■ The fifth and sixth inconsistencies that appellant alleges involve statements made at trial about people who may have been present during instances of abuse that K.Z. did not make in the Cornerhouse interview. Even if these omissions could be considered "inconsistent" with trial testimony, they were not substantial and the district court did not abuse its discretion by so finding.

On appeal, appellant argues for the first time that although K.Z. used a diagram at Cornerhouse to point out where appellant's semen might be on a floor, she did not specifically point to such a location during her trial testimony. But, at trial, K.Z. indicated where the incident that led to appellant's ejaculation on the carpet occurred by pointing a laser pointer at an exhibit showing the room in question. This was reasonably consistent with K.Z.'s Cornerhouse statement.

K.Z. was subject to cross-examination about the Cornerhouse statement, and appellant was allowed to argue all inconsistencies to the jury. We conclude that the district court did not abuse its discretion in admitting the Cornerhouse interview. Because there was no abuse of discretion, we need not address the issue of prejudice.

## II. Sentencing

■ In this case, appellant's right to a jury determination of aggravating sentencing factors established in *Blakely v. Washington,* 542 U.S. 296, 303, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004), and applied to the Minnesota Sentencing Guidelines in *State v. Shattuck,* 704

N.W.2d 131, 141–42 (Minn.2005), was recognized. Appellant was offered the opportunity to have a jury determine the existence of five aggravating factors identified by the state as having been established during the trial. Appellant, on the record, indicated he understood and waived the right to a jury determination of the existence of those factors. The case law establishing that in order for waiver of a jury trial to be knowing, voluntary, and intelligent, the defendant must specifically waive the right to testify, to have the witnesses testify in open court in the defendant's presence, to cross-examine the witnesses, and to require any favorable witnesses to testify applies only when a defendant is agreeing to a court determination of aggravating factors based on stipulated facts. *State v. Thompson*, 694 N.W.2d 117, 122 (Minn.App.2005) citing *State v. Halseth*, 653 N.W.2d 782, 785 (Minn.App.2002), *review granted* (Minn. June 28, 2005). This case is distinguishable. Appellant waived only the right to have a jury determine the existence of the factors and did not waive his right to testify, have prosecution witnesses testify in open court, cross-examine witnesses, and call witnesses on his own behalf. At the sentencing hearing, the state rested on the testimony presented at trial, all of which occurred in open court and was subject to cross-examination. Appellant did not testify or call witnesses, but appellant spoke to the court and presented numerous statements from witnesses on his behalf. Under the facts of this case, we conclude that appellant's waiver of the right to have a jury determine the existence of the five aggravating factors identified by the state prior to the waiver was

knowing, intelligent, and voluntary and that he retained but chose not to exercise additional rights that were not waived. The matter was not submitted on stipulated facts but on cross-examined testimony from the trial together with evidence appellant chose to present. We affirm the district court's determination of the existence of the aggravating factors identified by the state prior to the waiver warranting an upward sentencing departure.

 Appellant also challenges the judicial finding that he committed criminal sexual conduct in the first degree after August 1, 2000. Appellant was charged with committing first-degree criminal sexual conduct on or between September 15, 1998, and September 14, 2002. The jury was not asked to and did not determine the date(s) of appellant's criminal sexual conduct in the first degree beyond finding that the conduct occurred between September 15, 1998, and September 14, 2002. The state concedes that appellant was entitled to a jury finding regarding when the offense was committed, but argues (1) appellant waived this issue on appeal by failing to request an instruction; (2) appellant agreed to a judicial determination of sentencing facts; and (3) there was no plain error. *See generally State v. Robinson*, 480 N.W.2d 644, 646 (Minn.1992) (holding defendant had right to jury determination whether offense occurred after effective date of sentencing statute). We disagree.

Before appellant waived jury consideration of aggravating factors, the state had identified the five factors on which it was seeking departure, but the amendment to Minn.Stat. § 609.342, subd. 2(b),[1] was not

---

1. Effective August 1, 2000, the Minnesota legislature amended Minn.Stat. § 609.342 to include a presumed executed sentence of 144 months for first-degree criminal sexual conduct. 2000 Minn. Laws ch. 311, art. 4, § 2, at 211. Prior to August 1, 2000, the presumptive sentence for first-degree criminal sexual conduct under the Minnesota Sentencing Guidelines was 86 months. Minn.Stat. § 609.342 (1998); Minn. Sent. Guidelines IV

brought to the attention of the district court or defendant until the day of sentencing, after appellant had waived jury consideration of the identified aggravating factors. Although appellant did not request a jury instruction addressing this issue, the issue was not relevant until appellant was convicted. To have asked that the trial jury determine the date he committed offenses that he denied committing would have been contrary to and prejudicial to his theory of defense. Although there may be situations in which a failure to request such an instruction at trial may be considered a waiver, this is not such a situation.

■ Furthermore, because the state did not raise the issue of the application of the increased penalty until after appellant had waived a jury determination on the identified aggravating factors, we conclude that appellant did not make a knowing, intelligent, and voluntary waiver of the right to have a jury determine whether he committed first-degree criminal sexual conduct after the effective date of the amendment to the statute. Because appellant was never informed of his right to have a jury determination of this issue, we further conclude that his failure to object at sentencing to the district court's determination of the issue did not constitute a valid waiver. We hold that, in this case, the failure to have a jury determine the issue absent a valid waiver of the right to a jury determination was plain error. We therefore reverse the sentence imposed and remand for resentencing consistent with appellant's right to a jury determination of whether appellant committed first-degree criminal sexual conduct after August 1, 2000, the effective date of the amendment to Minn.Stat. § 609.342, subd. 2(b). On remand, appellant may choose to waive jury consideration of this issue and may agree to have the issue determined on stipulated facts, but if so, the district court must take care to ensure a full record on each right appellant waives in connection with this determination.

## DECISION

The district court did not abuse its discretion in admitting a videotape of the victim's Cornerhouse interview that was substantially consistent with her trial testimony. Appellant validly waived his right to have a jury determine the existence of five aggravating factors identified by the state prior to the waiver. Unless he validly waives the right, appellant is entitled to a jury determination of whether he committed first-degree criminal sexual conduct after August 1, 2000, the effective date of the amendment to Minn.Stat. § 609.342, subd. 2(b).

**Affirmed in part, reversed in part, and remanded.**

(2000) (showing the presumptive guideline sentence of 86 months for a defendant with a criminal history score of zero who is convicted of first-degree criminal sexual conduct).