STATE of Minnesota, Respondent,

v.

Robyn Keith AMOS, Sr., Petitioner, Appellant.

No. C1–01–1172.

Supreme Court of Minnesota.

March 27, 2003.

Bradford Colbert, St. Paul, MN, for Appellant.

Mike Hatch, Minnesota State Attorney General, St. Paul, MN, Amy J. Klobuchar, Hennepin County Attorney, Michael K. Walz, Assistant County Attorney, Minneapolis, MN, for Respondent.

## OPINION

ANDERSON, RUSSELL A., Justice.

Appellant Robyn Keith Amos, Sr. was found guilty by a jury of aiding and abetting a drive-by shooting, in violation of Minn.Stat. § 609.66, subd. 1e (2002), and Minn.Stat. § 609.05 (2002), and was sentenced by the trial court to a 78-month prison term. The court of appeals affirmed the conviction against claims by appellant that the evidence was legally insufficient and that the trial court had abused its discretion in the admission of prior testimony. We granted review solely to consider the trial court's evidentiary ruling. Concluding that the admission of prior testimony was proper where the witness feigned a lack of recall of the underlying events described in the prior testimony, the witness was present and testifying at trial, and the witness was subject to cross-examination concerning the prior testimony, we affirm.

To place the evidentiary ruling in context, a brief factual summary is necessary. Appellant Robyn Keith Amos, Sr. is the father of Robyn Keith Amos, Jr. and Melissa Moe. On October 14, 2000, Moe was involved in a fistfight with Laura Jackson, Amos, Sr.'s friend, at the home of Dawn Hayes. Police were called, restored order and left without making any arrests. Later that day, again at the Hayes residence, Moe and another person known as P.J. fought over Jackson's missing wedding band. Jackson had removed her jewelry before the fight with Moe, and Moe had been told that P.J. had the missing item. Moe struck P.J. with a large flashlight, and P.J. reciprocated by hitting Moe with an ironing board. Police were again called, and P.J. was taken to a hospital. Later that same day, Amos, Sr. called the Hayes residence and told Hayes that "[Jackson's] rings had better show up or some shit is going to go down." Amos, Jr. also called, telling Hayes: "[the rings] needed to show back up," or "some shit's going to go down."

Shortly after that phone conversation, Hayes' mother looked out the door to see if her grandchildren were outside. She saw a burgundy or red car moving slowly down the street. She recognized Amos, Sr. as the driver, Amos, Jr. as a passenger, and saw a third unidentified person in the rear seat. She closed the door. Shortly afterwards, as she was sitting on the couch, she heard a series of gunshots from the back of the house. A neighbor living across the alley saw a burgundy or maroon

car move slowly down the alley behind the Hayes residence two or three times and after the last pass heard shots fired in the vicinity of the Hayes residence.

Police were called. One of the responding officers was directed by Moe and Hayes to the back of the residence where he discovered bullet holes in the fence between the alley and the residence and bullet holes in the side of the residence itself. Police collected 15 discharged shell casings in the alley. Another officer patrolling nearby heard the description of the vehicle and pulled over a maroon Cadillac Eldorado with three people in the car, one of whom was identified as Amos, Sr. In the ensuing investigation, police recovered a nine-millimeter TEC–9 semiautomatic handgun that ballistics experts determined had fired at least two shell casings found in the alley behind the Hayes residence. Amos, Sr. was charged with aiding and abetting a drive-by shooting and Amos, Jr. was charged with a drive-by shooting, a charge later amended to aiding and abetting.

Amos, Jr. was tried first. At Amos, Jr.'s trial, Moe testified that she saw Amos, Sr.'s car behind the Hayes residence before the shooting and that Amos, Jr. was a passenger in the vehicle. *State v. Amos*, No. C4–01–713, 2002 WL 418369, at *2 (Minn.App. Mar.19, 2002). She identified the TEC–9 semiautomatic handgun as Amos, Jr.'s gun, and she testified that Amos, Jr. kept the gun under his bed. Two weeks later, at Amos, Sr.'s trial, Moe recalled the fight with Jackson but recalled nothing further about the day of the shooting incident, stating that she was confused and emotional. She remembered testifying at her brother's trial and acknowledged that she had tried to be truthful then, "as much as [she could] remember." When efforts to refresh Moe's recollection failed, the court excused the jury and allowed argument concerning the admissibility of Moe's prior testimony. The court found from its observation of the state's questioning of Moe that she had feigned a lack of memory and, over Amos, Sr.'s objection, allowed the use of Moe's prior testimony as an inconsistent statement under Minn. R. Evid. 801(d)(1)(A).

The jury found Amos, Sr. guilty as charged, and he received the 78 month presumptive sentence. The court of appeals affirmed, rejecting claims that the trial court's evidentiary ruling admitting Moe's prior testimony as substantive evidence was improper under Rule 801(d)(1)(A) and that the evidence was insufficient for conviction. *State v. Amos*, No. C1–01–1172, 2002 WL 523185, at *1 (Minn.App. Apr.9, 2002). As indicated, we granted review of the evidentiary ruling.

▄▄ Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. *State v. Glaze*, 452 N.W.2d 655, 660 (Minn.1990). On appeal, the appellant has the burden of establishing that the trial court abused its discretion and that appellant was thereby prejudiced. *State v. Nunn*, 561 N.W.2d 902, 907 (Minn. 1997).

Amos, Sr. argues that Moe's prior testimony does not qualify as inconsistent statements under Minn R. Evid. 801(d)(1)(A) because her lack of memory was not inconsistent with her prior testimony at Amos, Jr.'s trial. Amos, Sr. further argues that this lack of memory made Moe "unavailable," in which case her prior testimony would have been admissible, if at all, under Minn. R. Evid. 804(b)(1), an exception to the hearsay rule for former testimony in a retrial of the same defendant. Rule 801(d)(1)(A) provides, in relevant part, that a prior statement made by a witness is not hearsay if the prior statement was given under oath and subject to

the penalty of perjury at an earlier trial, and if the witness is now testifying and is subject to cross-examination concerning the prior statement, and the prior statement is inconsistent with the witness's present testimony.[1] Rule 804(b)(1) excepts certain hearsay statements from the hearsay rule and provides that in a criminal proceeding involving the retrial of a defendant for the same or an included offense, witness testimony from the previous trial is not excluded if the witness is unavailable.[2] Rule 804(a)(3) defines unavailability of a witness to include situations in which the witness testifies to a lack of memory of the subject matter of the witness's statement.[3] But if the trial court disbelieves the witness who claims a lack of memory, finding that unavailability is not established, "the extra-judicial statement might be admissible as a prior inconsistent statement if the requirements of Rule 801(d)(1)(A) are met." 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 804.03(4)(b), at 804–15 (Joseph M. McLaughlin ed., Matthew Bender 2d ed.2003).

To qualify as nonhearsay, a prior sworn statement must be inconsistent with the declarant's trial testimony. Minn. R. Evid. 801(d)(1)(A). Because Minnesota's Rules 801(d)(1)(A) and 804(b)(1) closely resemble their federal counterparts, we have looked to federal case law for guidance. *See, e.g., State v. Dukes*, 544 N.W.2d 13, 19 (Minn. 1996). We note that the federal courts do not limit the meaning of the word "inconsistent" in Fed.R.Evid. 801(d)(1)(A) to statements that are " 'diametrically opposed or logically incompatible' " with each other. *United States v. DiCaro*, 772 F.2d 1314, 1321 (7th Cir.1985) (quoting *United States v. Williams*, 737 F.2d 594, 608 (7th Cir.1984)). Federal courts generally agree that a feigned loss of memory regarding prior testimony is inconsistent and the prior testimony is admissible as nonhearsay under Rule 801(d)(1)(A). *See, e.g., United States v. Murphy*, 696 F.2d 282, 283–84 (4th Cir.1982); *United States v. Bigham*, 812 F.2d 943, 947 (5th Cir.1987) (stating that a reluctant witness's memory loss at trial was "convenient," and prior testimony was admissible under Fed.R.Evid. 801(d)(1)(A)); *DiCaro*, 772 F.2d at 1321–22 (concluding that a witness's claimed lack of recollection is sufficient to satisfy inconsistency requirement of Rule 801(d)(1)(A)); *United States v. Russell*, 712 F.2d 1256, 1258 (8th Cir.1983) ("[The witness's] statement on the stand that he could not recall having any contact with [the defendant] around the time he cashed the forged postal money orders is sufficiently inconsistent with his grand jury testimony for the trial

---

**1.** Rule 801(d)(1)(A) provides:
> A statement is not hearsay if—
> (1) *Prior statement by a witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition * * *.

Minn. R. Evid. 801(d)(1)(A).

**2.** Rule 804(b)(1) provides, in pertinent part:
> The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> (1) *Former testimony.* * * * In a criminal proceeding involving a retrial of the same defendant for the same or an included offense, testimony given as a witness at the prior trial or in a deposition taken in the course thereof.

Minn. R. Evid. 804(b)(1).

**3.** The advisory committee's comment to Rule 804(a)(3) provides: "If the declarant is present at trial but will not or cannot testify as to an issue for any reason, whether justified or not, the declarant is deemed to be unavailable on that issue for the purposes of the rule." Minn. R. Evid. 804, comm. cmt. 804(a).

court to admit the previous testimony [under Rule 801(d)(1)(A)].")." In support of admitting prior testimony upon a finding of a subsequent feigned lack of recollection, federal courts cite the advisory committee note indicating that the federal rule was intended to "provide a party with desirable protection against the 'turncoat' witness who changes his story on the stand and deprives the party calling him of evidence essential to his case." *E.g., United States v. Williams,* 737 F.2d 594, 609 (7th Cir.1984) (quoting Fed.R.Evid. 801(d)(1)(A) advisory committee note) (internal quotation marks omitted).

Some state courts also treat prior testimony as inconsistent with feigned claims of memory loss and admissible as nonhearsay. *See, e.g., State v. Osby,* 246 Kan. 621, 793 P.2d 243, 250 (1990) (determining that witnesses' testimony "was contradictory to their prior testimony," and "admissible as a matter of judicial discretion"); *Nance v. State,* 331 Md. 549, 629 A.2d 633, 645 (1993) (stating that a court may admit prior statements when witnesses display a selective loss of memory); *State v. Devlin,* 251 Mont. 278, 825 P.2d 185, 187 (1991) (noting that inconsistency "includes both positive contradictions and claimed lapses of memory"); *State v. Brown,* 138 N.J. 481, 651 A.2d 19, 49 (1994) *overruled on other grounds, State v. Cooper,* 151 N.J. 326, 700 A.2d 306 (1997) (concluding that a claimed lack of memory is essentially a denial of the prior statement, making the statement inconsistent and not hearsay); *State v. Lenarchick,* 74 Wis.2d 425, 247 N.W.2d 80, 87 (1976) (holding "where a witness denies recollection of a prior statement, and where the trial judge has reason to doubt the good faith of such denial, he may in his discretion declare such testimony inconsistent and permit the prior statement's admission into evidence.").

In addition, commentators agree that feigned lack of recollection at trial amounts to inconsistency for purposes of qualifying prior sworn statements as nonhearsay:

When is a prior statement inconsistent? On the face of it, a prior statement describing an event would not be inconsistent with testimony by the witness that he no longer remembers the event. Yet the tendency of unwilling or untruthful witnesses to seek refuge in forgetfulness is well recognized. Hence the judge may be warranted in concluding under the circumstances the claimed lack of memory of the event is untrue and in effect an implied denial of the prior statement, thus qualifying it as inconsistent and nonhearsay.

2 John W. Strong, *McCormick on Evidence* § 251, at 121 (4th ed.1992) (footnotes omitted). *See also* Weinstein & Berger, *supra,* at § 801.21(2)(b) ("A witness's statement that he or she has no recollection of the subject may be treated as 'inconsistent' with a former statement concerning the now-forgotten matter."). Professor Wigmore's view predates the modern trend of admitting prior inconsistent statements not only to impeach but also as substantive evidence, but he has observed:

It ought to follow that, where the witness *now* claims to be *unable to recollect* a matter, a former affirmation of it should be admitted as a contradiction. But courts have usually forbidden this, because the improper effect is apt to be to give a testimonial value to the former statement. * * * But the unwilling witness often takes refuge in a failure to remember, and the astute liar is sometimes impregnable unless his flank can be exposed to an attack of this sort. An absolute rule of prohibition would do more harm than good, and the trial court should have discretion.

3A John Henry Wigmore, *Evidence in Trials at Common Law* § 1043, at 1059–60 (James H. Chadbourn ed.1970) (citations and footnotes omitted).

We agree with the prevailing view that a trial court ought to have discretion to admit an unwilling witness's prior testimony as inconsistent with the witness's purported lack of memory at trial. The policy of affording protection against the unwilling witness was fully implicated in this case. Moe, under oath and subject to cross-examination, testified in some detail at her brother's trial to the events before, during, and after the shooting. Two weeks later, she claimed that she could not remember the shooting incident and that she was too emotional and confused to recall most of her previous testimony. Moe was obviously an evasive and reluctant witness, and the dubious circumstances surrounding her claimed memory loss made it entirely reasonable for the trial court to conclude that the memory loss was feigned. Moe's purported inability to recall the details of the shooting at her father's trial was plainly inconsistent with her ability to remember the same details at her brother's trial two weeks earlier.

The apparent necessity for the admission of prior testimony, however, does not in itself satisfy the requirements of Rule 801(d)(1)(A). The rule also requires that the witness be present and "subject to cross-examination" at trial "concerning the statement." Minn. R. Evid. 801(d)(1)(A). It may be that the validity of cross-examination at trial is not undermined even when the witness testifying at trial asserts no memory of the events reported in the earlier statement. *See United States v. Owens*, 484 U.S. 554, 561–64, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988) (approving admission under Fed.R.Evid. 801(d)(1)(C) of prior statement of victim naming defendant as assailant even though victim at trial could not remember seeing assailant). Nevertheless, the rule appears to require

that the witness be "testable about the statement, meaning that he must be reasonably responsive to questions on the circumstances in which he made it." 4 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 404, at 175 (2d ed.1994); *see Bigham*, 812 F.2d at 946.

Here, Moe testified at Amos, Sr's trial. She admitted that she testified at Amos Jr.'s trial two weeks earlier and that she had tried to tell the truth at that time. Although she claimed no recall of much of that testimony or the basis of the testimony, counsel for Amos, Sr. had a full opportunity to test the prior testimony. In fact, the record reflects that counsel for Amos, Sr. effectively cross-examined Moe not only concerning the prior testimony but also as to the basis of that testimony, eliciting from Moe details of the shooting incident favorable to the defense. Counsel for Amos, Sr. also elicited testimony from which he was able to argue that Moe's prior testimony should not be credited. Clearly, Moe was subject to cross-examination within the meaning of Minn. R. Evid. 801(d)(1)(A).

In summary, we hold that where a trial court finds that a witness is feigning lack of memory of the underlying events described in prior sworn testimony, the witness's prior testimony is admissible as inconsistent under Minn. R. Evid. 801(d)(1)(A) if the witness testifies and is subject to cross-examination concerning the prior sworn testimony. Inasmuch as the trial court reasonably concluded that Moe's selective memory loss was more convenient than actual and that Moe was subject to cross-examination concerning the prior testimony, the admission of the prior testimony was proper.

Affirmed.